# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MICHAEL S.,[1] | : | Case No. 3:21-cv-00336 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff filed an application for Supplemental Security Income (SSI) on November 13, 2015. Plaintiff's claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed an action with this Court.[2] The Court remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g). The Appeals Council remanded the case pursuant to the District Court's order. A different ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to Judge Michael J. Newman, Case Number 3:19-cv-00234.

Social Security Act. The Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

I. BACKGROUND

Plaintiff asserts that he has been under a disability since September 15, 2014.[3] At the beginning of the relevant period, he was forty-eight years old and so was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). He subsequently turned age fifty and changed age categories to "closely approaching advanced age." 20 C.F.R. § 416.963(d). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 416.964(b)(4).

The evidence in the Administrative Record ("AR," ECF No. 8) is summarized in the ALJ's decision (*id.*, PageID 708-20), Plaintiff's Statement of Errors ("SE," ECF No. 10), the Commissioner's Memorandum in Opposition ("Mem. in Opp.," ECF No. 11), and Plaintiff's Reply Memorandum ("Reply," ECF No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. Thus, the relevant time period in this case began on the SSI protective filing application date of November 13, 2015. See 20 C.F.R. § 416.335; *Koster v. Comm'r of Soc. Sec.*, 643 F. App'x 466, 478 (6th Cir. 2016) ("For purposes of SSI, which is not retroactive, the relevant period here is . . . the date [Plaintiff] filed his protective application.").

## II. STANDARD OF REVIEW

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different

3

conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. THE ALJ'S FACTUAL FINDINGS

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since the SSI application date of November 13, 2015.

Step 2: He has the severe impairments of "residual effects status-post closed left ankle fracture and surgical correction with asymptomatic medial malleolar nonunion; bipolar disorder, type I; anxiety disorder; panic disorder without agoraphobia, and a history of mild alcohol abuse in early remission."

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of medium work as defined in 20 C.F.R. § 416.967(c), subject to the following limitations: "(1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards, such as unprotected heights or dangerous machinery; (3) no driving of automotive equipment; (4) limited to performing simple, repetitive tasks, with an SVP of 1 or 2; (5) occasional, superficial contact with coworkers and supervisors, further defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals, but lacking the ability to engage in more complex social interaction, such as persuading other people or resolving interpersonal conflicts; (6) no public contact; (7) no close, over-the-shoulder supervision; (8) no fast-pace production work or jobs that involve strict production quotas; (9) limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next; and (10) no occupational exposure to alcohol."

He has no past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(AR, ECF No. 8-9, PageID 710-20.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and is not entitled to benefits. (*Id.*, PageID 720.)

IV.  **LAW AND ANALYSIS**

Plaintiff asserts that the ALJ failed to properly evaluate the longitudinal record from the SSI application date through March 2018. (SE, ECF No. 10, PageID 996.) For several reasons, the Court finds that this assertion is well-taken. Plaintiff also contends that the ALJ erred in his analysis of the opinions of treating psychologist Dr. Sheppard, mental health provider Ms. Franks, and consultative physician Dr. Danopulos. (*Id.*) Finding error in the ALJ's analysis of the longitudinal record, the Court does not address Plaintiff's other assigned errors and instead instructs the ALJ to address all of them on remand.

A.  **The ALJ's RFC Is Not Supported By Substantial Evidence**

A claimant's residual functional capacity ("RFC") describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 416.946(c). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(4). The ALJ must base the RFC on all relevant evidence in the record. 20 C.F.R. § 416.945(a)(1). Relevant evidence includes "information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 SSR LEXIS 5, *5-6 (July 2, 1996).

Here, although the ALJ stated that he considered the "overall objective evidence of record," he emphasized that Plaintiff's condition had improved as of March 2018 due

to treatment compliance and substance use cessation. (AR, ECF No. 8-9, PageID 712-13, 715-16, 718.) The ALJ reasoned that because Plaintiff's condition had improved, he did not need to include more restrictive limitations in the RFC. (*Id.*) But by essentially limiting his RFC assessment to evidence from the end of the relevant time period, the ALJ did not fully account for the longitudinal evidence since the SSI application date. Therefore, his RFC assessment is not supported by substantial evidence.

For example, when discussing Plaintiff's mental impairments in connection with formulating the RFC, the ALJ summarized the objective evidence from the application date through March 2018 in just one sentence: "[Plaintiff's] treatment notes show that he has a history of impairment with memory through 2017 (1F/18, 1F/22, 5F/10, 5F/13, 5F/17, 5F/23, 5F/25, 6F/5, 10F/5, 13F/1, 13F/6, 16F/1)." (AR, ECF No. 8-9, PageID 715-16.) Conversely, the ALJ provided a detailed and lengthy description of the objective evidence dated since March 2018. (*Id.*, PageID 716.) He described several evaluations and concluded that although some of them showed tangential thought associations and impaired judgment, all of the other findings were "average" or normal. (*Id.*)

The evidence prior to March 2018, however, shows several other abnormalities in addition to an impaired memory. For example, in mental health treatment notes dated between January 2016 and March 2018, Plaintiff complained of symptoms associated with depression and anxiety, including anhedonia, fatigue, feelings of worthlessness, difficulty concentrating, panic attacks, worry, racing thoughts, irritability, and feeling tense. (*E.g.,* AR, ECF No. 8-7, PageID 518; ECF No. 8-14, PageID 917.) He also reported manic symptoms including racing thoughts, hyperactivity, talkativeness,

7

increased goal-oriented activity, and flight of ideas. (*Id.*) Counselor Joseph Cimoch, L.P.C.C. indicated in January 2016 that Plaintiff appeared anxious and was "overly verbal." (AR, ECF No. 8-8, PageID 679, 685.) Mr. Cimoch also reported that Plaintiff minimized his alcohol use, isolated from others, and reported a low level of motivation. (*Id.*) The RFC did not adequately account for this evidence.

It is true that Plaintiff's mental status examinations showed some normal findings, such as a euthymic mood, full-ranged affect, cooperative behavior, and no suicidal or homicidal ideation. (AR, ECF No. 8-7, PageID 366, 512, 514, 544.) But Plaintiff's providers also documented abnormalities that included pressured or rapid speech, hyperkinetic movements, tangential and/or disorganized thought processes, impaired insight, and impairment of memory and/or concentration. (AR, ECF No. 8-7, PageID 366, 512, 516, 518, 547; ECF No. 8-14, PageID 917.) Notably, in addition to omitting this evidence from the RFC analysis, the ALJ also failed to mention any of these findings in the "Paragraph B" analysis at Step 3. (AR, ECF No. 8-9, PageID 712-13.)

Accordingly, the Court finds that the ALJ's one-sentence summary of the pre-March 2018 evidence failed to address significant evidence that supports Plaintiff's mental health complaints. The ALJ's failure to consider this evidence signifies an impermissibly selective review of the record. *E.g.*, *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the medical record"). An ALJ is not required to directly address every piece of evidence submitted by a party. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 469, 508 (6th Cir. 2006). But the ALJ's failure to acknowledge almost any of the Plaintiff's

8

mental health evidence before the end of the relevant time period leads the Court to conclude that the RFC is not supported by substantial evidence.

### B. The ALJ Failed to Consider Whether a Closed Period of Disability Was Warranted.

A claimant must meet the twelve-month durational requirement before he can be found disabled. 42 U.S.C. § 423(d)(1)(A). The Sixth Circuit has held that while "[t]he Act itself does not provide for a closed period of benefits . . . we think it clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). Thus, a claimant who satisfies the twelve-month durational requirement "may be entitled to benefits from the time his disability commences until such time as the disability ceases." *Lang v. Sec'y of Health & Hum. Servs.*, No. 88-1561, 1989 WL 40188, at *2 (6th Cir. 1989) (citing *Howse v. Heckler*, 782 F.2d 626 (6th Cir.1986)).

An ALJ need not use any "magic words" to indicate that he has considered whether a closed period of disability is warranted. *Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-CV-1571, 2012 WL 567614, at *1 (N.D. Ohio Feb. 21, 2012). But the ALJ must nevertheless consider "every period during which [a claimant] may have been disabled." *Cash v. Comm'r of Soc. Sec.,* No. 3:16-CV-175, 2017 WL 3473813, at *4 (S.D. Ohio Aug. 14, 2017) (Newman, M.J.) (citation omitted), *report and recommendation adopted*, No. 3:16-cv-175, 2017 WL 3769371 (S.D. Ohio Aug. 29, 2017) (Rice, D.J.).

Here, given the ALJ's heavy reliance on evidence showing that Plaintiff's condition had improved, it is apparent that he failed to consider whether Plaintiff might be entitled to a closed period of disability. This error, too, requires reversal.

### C. The ALJ Failed to Comply With SSR 16-3p When Evaluating Plaintiff's Symptom Severity

The ALJ reversibly erred by failing to comply with the Social Security Administration's rule for evaluating symptom severity, SSR 16-3p, when he evaluated the longitudinal record. Specifically, the ALJ apparently relied upon Plaintiff's noncompliance with treatment prior to March 2018 to conclude that his symptoms were not disabling. Because the ALJ did not comply with the requirements of SSR 16-3p when he drew this conclusion, reversal is required.

When a claimant alleges symptoms of disabling severity, the Social Security Administration requires ALJs to use a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social

Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the

11

individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

As part of this analysis, the ALJ is required to determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider whether an individual's statements are consistent with his symptoms, keeping in mind that the statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. at *9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without

12

considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id.* at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id.* at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

Here, the ALJ repeatedly stated that Plaintiff's condition had improved as of March 2018 because of treatment compliance and substance use cessation:

> However, by March 2018, with treatment, [Plaintiff's] objective treatment notes show that his memory, including both recent and remote memory, improved to average . . . . (AR, ECF No. 8-9, PageID 712)
>
> However, with treatment, since March 2018, [Plaintiff's] objective treatment notes consistently show that his attention span and concentration improved to average . . . . (*Id.*, PageID 713)
>
> Instead, the State Agency psychologist findings in 2016 are most consistent with the overall objective evidence, including the objective treatment notes, especially since early 2018. Prior to that time, [Plaintiff] was non-compliant with alcohol and cannabis cessation . . . . [Plaintiff] also had an alcohol relapse in 2017, where he was non-compliant with his prescribed treatment plan of cessation . . . . [Plaintiff] also has a past history of non-compliance with his medicines . . . . However, when [Plaintiff] became compliant, his symptoms improved . . . . Recent notes from May 2020 show that with treatment compliance, [Plaintiff] now has average attention span and average concentration . . . . (*Id.*)
>
> However, [Plaintiff] became compliant with his treatment, including alcohol cessation in 2018, and with cannabis cessation in 2017 or 2018 .

13

> . . . (*Id.*)
>
> [Plaintiff] alleged that he now only drinks alcohol on occasion, and the notes show that when [Plaintiff] became complaint with alcohol cessation, his symptoms improved, especially since March 2018, because [Plaintiff] had a relapse in 2017 . . . . (*Id.*, PageID 715-16)
>
> [Plaintiff's] treatment notes show that he has a history of impairment with memory through 2017 . . . . However, since March 2018, when [Plaintiff] became compliant with his treatment plan, the claimant's concentration and memory improved to "average" . . . . (*Id.*, PageID 716)
>
> Since [Plaintiff] was compliant with his treatment plan, including marijuana and alcohol cessation, [Plaintiff's] objective treatment notes consistently show that his attention span and concentration improved to average . . . . (*Id.*)
>
> Moreover, Dr. Sheppard's initial evaluation in 2016 occurred during a time where [Plaintiff] was non-compliant with treatment, including with medication, alcohol cessation, and marijuana cessation. The record shows that when [Plaintiff] became compliant with his psychiatric treatment, his symptoms improved. (*Id.* at PageID 717)
>
> Notably, [Plaintiff] has been mostly compliant with his treatment since March 2018, and his symptoms have notably improved since that time, which is inconsistent with Ms. Franks' submitted opinion (*Id.* at PageID 718).

(AR, ECF No. 8-9, PageID 712-13, 715-16, 718.) The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*, PageID 714-15.)

14

The ALJ's approach does not comply with the Social Security Administration's requirement that an ALJ consider *why* a claimant's treatment history is inconsistent with his complaints when evaluating symptom severity:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). Notably, SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An individual's inability to understand the need for consistent treatment and an individual's lack of awareness that treatment is needed[4] are two possible reasons an ALJ should consider when evaluating a claimant's lack of treatment. SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because he did not consider possible reasons why Plaintiff failed to comply with or seek treatment consistent with the degree

---

[4] SSR 16-3p specifically states that a mental impairment that affects judgment, reality testing, or orientation may prevent an individual from being aware that she has a disorder that requires treatment. 2017 WL 5180304 at *10.

15

of his complaints. The ALJ also did not develop the record regarding possible reasons for Plaintiff's noncompliance as required by SSR 16-3p. During the July 2020 hearing, the ALJ asked Plaintiff about his mental health treatment and his drinking. (AR, ECF No. 8-9, PageID 733-51.) Plaintiff testified that he had seen Dr. Sheppard and Sara Ferguson at Eastway Mental Health "once every couple of months." (*Id.*, PageID 736, 749-51.) Plaintiff explained that he had difficulty concentrating and remembering, which made it difficult to keep track of medical appointments. (*Id.*, PageID 743, 749.) When the ALJ asked about alcohol use, Plaintiff acknowledged a history of alcohol use but said he was no longer drinking. (*Id.*, PageID 747.) He said he "went on . . . a three or four week binge" after he "got turned down" after "[t]he State hearing" and had not consumed alcohol since then. (*Id.*, PageID 747-48.) But the ALJ did not ask Plaintiff why he was noncompliant with treatment recommendations, including a recommendation to stop drinking alcohol, prior to March 2018. (*Id.*, PageID 733-51.)

SSR 16-3p recognizes that an individual's mental impairments and limitations may prevent an individual from understanding the need for treatment, or may affect the individual's judgment to the point he is unaware he has a disorder which requires treatment. 2017 WL 5180304 at *10. Similarly, the Sixth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Here, the ALJ did not acknowledge, much less address, Plaintiff's explanation that his difficulties with concentration and memory caused difficulty keeping track of medical appointments. (AR, ECF No. 8-9 PageID 743, 749.) The ALJ did not consider any other

16

possible explanations for Plaintiff's failure to comply with or seek treatment consistent with the degree of complaints alleged. Nor did the ALJ develop the record by inquiring about why Plaintiff was noncompliant with or failed to seek treatment. The ALJ's failure to comply with SSR 16-3p is an error of law that warrants reversal.

  **D. The ALJ Reversibly Erred By Failing to Comply With SSR 13-2p When Evaluating Plaintiff's Substance Abuse.**

  The ALJ also erred by failing to comply with the Social Security Administration's rule for evaluating substance abuse, SSR 13-2p, when he evaluated the longitudinal record. For this reason, too, reversal is required.

  The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Social Security Ruling 13–2p interprets this regulation and governs the evaluation of cases involving drug addiction and alcoholism (DAA). 2013 WL 621536 (Feb. 20, 2013) (effective March 22, 2013).

  SSR 13-2p applies if "evidence from acceptable medical sources … establish[es] that DAA is a medically determinable impairment(s)." 2013 WL 621536 at *3. The ALJ will determine materiality if: (1) there is "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder," and (2) the claimant is found to be disabled "considering all impairments, including the DAA." *Id.* at *4; *see also* 20 C.FR. § 404.1535. The ALJ must decide "whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol, that is . . . whether DAA is

17

*material* to the finding that the claimant is disabled." *Id*. (emphasis in original). If the claimant were to stop using drugs or alcohol, DAA is material if he would not be disabled in that circumstance, and is not material if he would be disabled in that circumstance. *Id*.

Here, the ALJ did not consider Plaintiff's alcohol abuse in the manner required by SSR 13-2p. The ALJ did find that Plaintiff's history of alcohol abuse was a severe impairment at Step 2. (AR, ECF No. 8-9, PageID 710.) But instead of considering the cumulative effect of Plaintiff's alcoholism on his alcoholic neuropathy, cirrhosis, and other impairments—as required by SSR 13-2p—the ALJ only considered whether Plaintiff's alcoholism detracted from the consistency of his reported symptoms. (*Id.*, PageID 712-13, 715-16, 718.)

The ALJ's comments about Plaintiff's noncompliance with substance abuse recommendations prior to March 2018 suggests that the ALJ essentially considered the net effects of Plaintiff's severe impairments in the sequential evaluation process for that time period. This was incorrect. The ALJ should have first considered the full effects of Plaintiff's impairments, including alcohol abuse, and then proceeded to determine whether Plaintiff's alcoholism was material—that is, whether he would or would not have been disabled if he had stopped the alcohol abuse. *See* SSR 13-2p. Thus, the ALJ failed to apply the correct legal standard for evaluating Plaintiff's alcoholism. This failure constitutes reversible error and is another reason why the case should be remanded.

## VI. CONCLUSION

In sum, the ALJ's RFC is unsupported by substantial evidence, the ALJ failed to consider whether a closed period of disability is warranted, and the ALJ failed to evaluate

18

Plaintiff's symptom severity and substance use in accordance with the applicable Social Security rules. Accordingly, reversal is warranted. The Court does not address Plaintiff's other assigned errors and instead instructs the ALJ to address all of them on remand. In light of the Court's opinion, however, the ALJ should reconsider its reliance on a finding that Plaintiff's condition improved by March 2018 to discount the medical opinions.

## VII. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the time period prior to March 2018 and to the medical opinions of record, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law.

The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for SSI should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 10) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge